IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| Lawrence LaRoche, III and Parker LaRoche,<br><br>Plaintiffs,<br><br>v.<br><br>Christopher Chapman, David Gardner, \_\_\_\_\_ Johnson,[1] Robert Karwacki, Brian Keebler, Michael Melton, Richard Perry, Karone Robinson, James Stenander, George Trexler, Randy Turner, Jason Turner, and one or more John Does<br><br>Defendants. | Civil Action No.: 2:19-cv-118 |

## COMPLAINT

COME NOW, Plaintiffs Lawrence LaRoche, III, and Parker LaRoche, by and through their attorney, E. Michael Ruberti, Esq. and complaining against Defendants, allege as follows:

### JURISDICTION AND VENUE

1. This action arises under (i) the Constitution of the United States, particularly the Fourth and Fourteenth Amendments; (ii) the laws of the United States, particularly the Civil Rights Act, Title 42 U.S.C. §§ 1983 and 1988; and (iii) the laws of the State of Georgia, particularly O.C.G.A. §§ 51-1-13 and 51-1-14, and O.C.G.A. § 51-7-20.

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because it is where some or all of the defendants reside and where the events complained of occurred.

---

[1] \_\_\_\_\_ denotes first name unknown.

1

## PARTIES

5. Plaintiffs Lawrence LaRoche, III ("Larry") and Parker LaRoche ("Parker") are now, and at all times material herein were, residents of Townsend, McIntosh County, Georgia.

6. Defendants were, at all times material herein, law enforcement officers employed by the McIntosh County Sheriff's Department.

## FACTUAL ALLEGATIONS

7. At all times material herein, Plaintiffs were residing at 1023 River Dance Loop, Townsend, Georgia, 31331, in McIntosh County, Georgia. ("Plaintiffs' residence").

8. On or about January 24, 2018, at Plaintiffs' residence, Plaintiffs retired to their separate bedrooms at about 10:00 p.m., and each fell asleep shortly thereafter.

9. On or about January 24, 2018, between 10:00 p.m. and midnight, Plaintiffs were asleep at Plaintiff's residence.

10. On or about January 24, 2018, Defendants, between 10:00 p.m. and midnight, entered Plaintiffs' residence without knocking at their door or otherwise seeking permission to enter the residence.

11. Several of the Defendants were heavily armed and dressed in what appeared to be SWAT uniforms. ("SWAT gear").

12. One or more of the Defendants were armed and dressed in civilian clothing.

### Larry

13. Moments after Defendants entered Plaintiffs' residence, two or more Defendants burst into Larry's bedroom, screaming obscenities, and brandishing drawn weapons and bright flashlights, the latter of which they shined in Larry's eyes.

14. These Defendants were wearing SWAT gear.

15. Larry was startled out of his sleep by the powerful and explosive entry of these Defendants into his bedroom.

16. Larry was terrified by the actions of these Defendants, as described herein.

17. At the time that these Defendants burst into his bedroom, Larry was hooked up to a breathing machine.

18. These Defendants, upon bursting into Larry's bedroom, and while training their flashlights on his face and their weapons directly at him, shouted for him to get out of bed.

19. Larry was sleeping naked.

20. These Defendants shouted at Larry to lie down on the floor.

21. Larry, still naked, attempted to comply.

22. As Larry attempted to comply with the orders shouted by these Defendants, one or more of these Defendants handcuffed Larry's hands behind his back.

23. Larry's terror intensified.

24. Thereafter, these Defendants brought Larry, who was still naked, handcuffed, and terrified, into the kitchen.

25. These Defendants directed Larry to sit at the kitchen table.

26. Larry complied with their directive.

27. While sitting naked at the kitchen table, Larry was some six or seven feet from the open kitchen door.

28. The cold January night air had filled the area around the kitchen table.

29. Larry became very cold and began shivering uncontrollably.

30. Larry asked Defendants to allow him to put on some clothing.

31. Defendants initially denied Larry's request.

32. Within a few minutes, one of the Defendants placed a sheet over Larry.

33. The sheet did nothing to protect Larry from the cold.

34. Larry continued to be cold and to shiver uncontrollably.

35. A few minutes later Defendants allowed Larry to put on a t-shirt.

36. Neither the sheet nor the t-shirt alleviated Larry's shivering and suffering from the cold.

37. Defendants eventually permitted Larry to put on some clothing.

### Parker

38. At the same time that two or more Defendants burst into Larry's bedroom, two or more other Defendants burst into Parker's bedroom.

39. These other Defendants burst into Parker's bedroom screaming obscenities, and brandishing weapons and bright flashlights, the latter of which they shined in Parker's eyes.

40. These other Defendants were wearing SWAT gear.

41. Parker was startled out of his sleep by the powerful and explosive entry of these other Defendants into his bedroom.

42. Parker was terrified by the actions of these other Defendants, as described herein.

43. These other Defendants, upon bursting into Parker's bedroom, and while training their flashlights on his face and their weapons directly at him, shouted for him to get out of bed.

44. Parker complied.

45. These other Defendants shouted at Parker to lie down on the floor.

46. Parker, who was naked except for his boxer undershorts, complied.

47. While Parker lay on the floor with these other Defendants' flashlights and weapons trained on him, one or more of these other Defendants handcuffed his hands behind his back.

48. While Parker lay on the floor with his hands handcuffed behind his back, one of these other Defendants stood on Parker's back.

49. At the time that one of these other Defendants stood on Parker's back, Parker had a pre-existing spinal cord injury that had been very painful for many years, and for which he had received regular pain treatment.

50. When one of these other Defendants stood on Parker's back, Parker's spinal cord pain became excruciating.

51. One of these other Defendants standing on Parker's back exacerbated Parker's spinal cord injury.

52. As a direct result of one of these other Defendants standing on his back, the pain from Parker's spinal cord injury has remained excruciating since that time.

53. Parker's terror intensified.

54. Moments later, these other Defendants brought Parker, handcuffed, in excruciating pain, and terrified, into the living room.

55. These other Defendants directed Parker to sit on the living room couch.

56. Parker complied with the directive of these other Defendants.

57. While sitting on the living room couch, Parker was some 10 to 12 feet from the open kitchen door.

58. The cold January night air had filled the area around the living room couch as well as around the kitchen table.

59. Parker became very cold and began shivering violently.

<u>Larry, Parker and Defendants' Search Of The Residence</u>

60. While several Defendants detained Larry in the kitchen, and Parker in the living room, still other Defendants searched the entirety of Plaintiffs' residence.

61. Defendants' search included, but was not limited to, (i) the refrigerator; (ii) the freezer; (iii) drawers; (iv) the breadbox; (v) cabinets; (vi) the stove; (vii) the oven; and (viii) every room in Plaintiffs' residence.

62. Several times during the period of time that Defendants remained in Plaintiffs' residence, Parker asked Defendants to show him a warrant, and to be provided with a copy of any such warrant, but Defendants ignored his requests.

63. Several times during the period of time that Defendants remained in Plaintiffs' residence, Larry and Parker asked Defendants what they were searching for, but Defendants refused to answer their questions, stating only that: "You know why we're here," or words to that effect.

64. Eventually, Defendants removed Larry's and Parker's handcuffs, and left Plaintiffs' residence.

65. The duration of Defendant's unlawful (i) entrance into Plaintiffs' residence, (ii) terroristic entrance into Plaintiffs' bedrooms, and (iii) seizure, physical abuse, and search of Plaintiffs and of Plaintiffs' residence ("Defendants' unlawful actions") was approximately an hour.

66. Plaintiffs, under threat of physical violence up to and including being murdered, were not free to leave their residence or to move freely about their residence at any time from Defendants' unlawful entry until such time that Defendants departed Plaintiff's premises.

### Count 1 Under 42 U.S.C. §§ 1983 and 1988

67. Plaintiffs repeat and re-allege all prior allegations.

68. At no time during the period of Defendants' unlawful actions, were Plaintiffs arrested or charged with any crime, and, at the end of such period, Plaintiffs were released without being arrested and without any charge being made, and no arrest or charge has subsequently been made.

69. None of the Defendants, at any time during the above-mentioned period of Defendants' unlawful actions, had in any of their possession(s) any arrest or search warrant issued by any judge, court, or magistrate authorizing any of Defendants' unlawful actions, and in fact no arrest or search warrant had been issued by any court, judge, or magistrate permitting Defendants' unlawful actions.

70. Each of the Defendants, individually and in concert with the others, acted under pretense and color of law and their official capacity, but such acts were beyond the scope of their jurisdiction and without authorization of law. Each Defendant, individually and in concert with the others, acted willfully and knowingly, and caused Plaintiffs to be deprived of (i) their individual rights to freedom from unlawful searches and seizures of their persons, papers, and effects; and (ii) their individual rights to freedom from unlawful entry, search, physical abuse, terroristic threats, arrest, detention, seizure and imprisonment, all of which rights are secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States, and by 42 U.S.C. § 1983.

71. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to a reasonable allowance for attorney fees as a part of their costs.

### Count 2 Under O.C.G.A. §§ 51-1-13 and 51-1-14

72. Plaintiffs repeat and re-allege all prior allegations.

73. By their actions as alleged in paragraphs 7-37, two or more Defendants committed

the Georgia torts of assault and battery upon Larry.

74. By their menacing presence and support for the two or more Defendants who committed the torts of assault and battery against Larry, all other Defendants aided and abetted the two or more Defendants in the commission of the torts of assault and battery upon Larry.

75. By their actions as alleged in paragraphs 7-12 and 38-59, two or more other Defendants committed the Georgia torts of assault and battery upon Parker.

76. By their menacing presence and support for the two or more other Defendants who committed the torts of assault and battery upon Parker, all other Defendants aided and abetted the two or more other Defendants in the commission of the torts of assault and battery upon Parker.

77. Because the torts of assault and battery are intentional torts, Plaintiffs are entitled to a reasonable allowance for attorney fees as part of their costs.

### Count 3 Under O.C.G.A. § 51-7-20

78. Plaintiffs repeat and re-allege all prior allegations.

79. By their actions as alleged in paragraphs 7-66, Defendants committed the Georgia torts of false imprisonment and false arrest against Larry and Parker.

81. Because false imprisonment and false arrest are intentional torts, Plaintiffs are entitled to a reasonable allowance for attorney fees as part of their costs.

WHEREFORE, each Plaintiff requests (a) a trial by jury; and (b) judgment against Defendants as follows:

1. Compensatory damages against each and every Defendant in an amount to be proven at trial;

2. General damages against each and every Defendant in an amount to be proven at trial;

3. Special damages against each and every Defendant in an amount to be proven at trial;

4. Punitive damages against each and every Defendant in an amount to be proven at trial;

5. Reasonable attorney fees under both federal and state law;

6. Costs of suit; and

7. Such other and further relief as the court deems just and proper.

Dated: September 20, 2019

                                      E. MICHAEL RUBERTI, ESQ., LLC

*/s/ E. Michael Ruberti*
E. Michael Ruberti, Esq.
Georgia Bar No.: 618343
Post Office Box 20649
St. Simons Island, Georgia 31522
Phone: (912) 634-2130
Fax: (912) 634-3783
Email: emr@rubertilaw.com