## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| Lawrence LaRoche, III<br>and Parker LaRoche | ) | |
| | ) | |
| | ) | Civil Action No.: 2:19-cv-118 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Christopher Chapman, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' (1) STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE EXISTS NO GENUINE DISPUTE
TO BE TRIED; AND (2) CONCLUSIONS OF LAW**

**Plaintiffs' Statement of Facts As To Which There
Exists No Genuine Dispute To be Tried**

COME NOW Plaintiffs Lawrence LaRoche, III and Parker LaRoche, by and through

their attorney, E. Michael Ruberti, Esq., and submit their Statement of Material Facts and

Conclusions of Law as follows:

1.      On Wednesday, January 24, 2018, at about 10 p.m., plaintiffs Larry LaRoche

("Larry") and Parker LaRoche ("Parker") were asleep in their home at 1023 River Dance Loop

("1023 RDL"), in Townsend, Georgia.  Deposition of Lawrence LaRoche, III ("Larry") 5:24 –

6:4; 17:14-24; 19:10-12; 27:5-6; 43:12-15; 44:1-4; 59:8-16. Deposition of Parker LaRoche

("Parker") 26:16-20.

2.      Defendants, outfitted in SWAT gear, without knocking or otherwise requesting

permission to enter, burst into Larry's and Parker's home.  Larry 23:14-18; 24:12-16; 27:3-15;

59:14 – 60:22. Parker 26:11-20; 27:16-21; 40:21 – 41:9; 46:8-22; Exh. A, p. 26.

3.      Defendants did not have a search or arrest warrant at the time they burst into Larry's and Parker's home.  Larry 20:16 – 21:12; 22:17-20; 23:14-18; 20:24 – 21:12; 22:13-20; 34:20 – 35:1; 42:4-18; 46:17 – 47:1. Parker 26:11-20; 40:21 – 41:9; 46:8-22; 46:17 – 47:1. Exh. A p. 26.

4.      Larry, Parker, Larry's son Lawrence LaRoche, IV ("Chance") and Barbara Thomas ("Thomas"), were witnesses to the time of defendants' entry into and departure from 1023 RDL.  Chance  Affidavit ¶¶ 1-22. Thomas Affidavit ¶¶ 1-21.

5.      Rachel Smith ("Smith") was a witness to the time of defendants' departure from 1023 RDL. Smith  Affidavit ¶¶ 1-19.

6.      Chance and Thomas observed the raid begin at approximately 10:00 to 10:15 p.m. on January 24, 201.  Chance ¶¶ 3-12. Thomas ¶¶ 2-11.

7.      Defendants' manner of entry and subsequent actions terrified Larry and Parker. Larry 59:8 – 65:7. Parker 26:14-20; 27:16 – 33:6.

8.      Because they were asleep and terrified by defendants' actions, neither Larry nor Parker is sure exactly what time the raid occurred. Larry 24:12-20; 27:3-6; 45:2-6; 59:8 – 65:7. Parker 26:14 – 27:4; 27:16-21; 28:13-19; 30:13-19; 33:2-25.

9.      Larry "guesstimated" that, without having had his attention directed to page 24 of Exh. A (showing that the magistrate signed the warrant at 1:00 a.m. on January 25), the raid began at about 12:00 a.m. on January 25.  Larry 20:24-21-10; 24:12-20; 27:3-6; 45:2-6; 46: 47:1.

10.     Parker, without having been shown the warrant, "guesstimated" that the raid began about 1:00 a.m.  Parker 26:14 – 27:4.

11.     Defendants remained in Larry's and Parker's home for approximately one hour, until no later than 11:30 p.m. Chance ¶¶ 12-22. Thomas ¶¶ 11-21. Smith ¶¶ 18-19. Deposition of Michael Melton ("Melton") 16:16-21. Larry 30:11-18; 44:1 – 45:9.

12.     While they were there, defendants seized Larry and Parker and conducted an extensive, intrusive, destructive search of their home. Larry 30:10 – 32:11. Parker 34:5-20.

13.     On several occasions, plaintiffs asked defendants to show them a warrant. Larry 20:15 – 21:12; 22:17-20; 23:14-18; 34:20 – 35:1; 42:4-18; 46:17 – 47:1. Parker 40:21 – 41:9; 46:8-22.

14.     Defendants, having no warrant, did not produce one. Larry 20:15 – 21:12; 22:17-20; 23:14-18; 34:20 – 35:1; 42:4-18; 46:17 – 47:1. Parker 40:21 – 41:9; 46:8-22.

15.     Defendants, despite rummaging through all of plaintiffs' belongings, found no evidence of a crime. Larry 33:5-25; Plaintiffs' Exh. A, p. 9 (¶3).

16.     Defendants left without arresting either plaintiff or seizing any of either's property. Larry, 33:5-25; 42:18-25; Exh. A, pp. 1, 9 (¶3).

17.     Defendants defend their actions as being authorized by a search warrant for 1023 RDL signed by magistrate James B. Smith, at 1:00 a.m. on January 25. Exh. A, p. 24. [1]

18.     Melton obtained the search warrant. Deposition of Karone Robinson ("Robinson") 24:1 – 27:17; Exh. A, pp. 9 (¶3), 24; Melton 10:23 – 11.2.

19.     Melton and Robinson knew that, without a search warrant, theirs and the remainder of the SWAT team's actions were unlawful. Melton 11:10-18. Robinson 24:1-12.

20.     Robinson was in charge of defendants' "operation" at 1023 RDL. Melton 8:1-5; 9:10 – 10:4.

---

[1] Larry and Parker lived at 1023 RDL, not 1028. The warrant's references to "1028" RDL in Melton's affidavit, being immaterial herein, are corrected to "1023" RDL.

21.     Melton typed the affidavit in support of the warrant based upon information given to him by Robinson, which in turn was allegedly given to Robinson by a purported confidential informant. Melton had no personal knowledge of what is alleged in the affidavit he signed and presented to the magistrate. Melton 8:1-5; 10:23 – 11:1; 11:10-13; 15:14 – 22; 17:7 – 19:4. Exh. A, pp. 8-9.

22.     Throughout defendants' raid, (i) it is undisputed that Larry and Parker were located within 1023 RDL; (ii) Chance was outside on the uncovered front porch, where he had been handcuffed after being arrested by defendants, Chance ¶¶ 9-17; Thomas ¶¶ 2-18; (iii) Thomas was in her mobile home watching the SWAT raid, which included the arrest and handcuffing of Chance, unfold from about 75 feet away, Thomas ¶¶ 2-18; and (iv) Smith was babysitting in Trailer A-3 in the Buccaneer Trailer Park ("A-3"), Smith ¶¶ 5-19.

23.     Melton and Robinson were at plaintiffs' home from the beginning to the end of the raid at 1023 RDL, after which they went directly to A-3 where Smith was babysitting. Melton 15:5-15, 25:17 – 26:20. Exh. A, p. 7 (¶1).

24.     Robinson and several other SWAT team members pounded on the door of A-3 demanding entrance, between 11:00 and 11:30 p.m. Smith ¶¶ 5-14. See Robinson 37:12-17. Melton 15:5-11, 25:17 – 26:20. Exh. A, p. 7 (¶1).

25.     Frightened, Smith allowed them to enter. Smith ¶¶ 5-10.

26.     Melton remained outside A-3 while defendant Robinson and the other SWAT team members were inside. Melton 15:8 – 16:15.

27.     Robinson and the other SWAT team members remained in A-3 for about an hour, until no later than 11:30 p.m. Smith ¶¶ 18, 19.

28.     The Return of Service for the search warrant for 1023 RDL, signed by Robinson, places the time of the execution of the warrant at "0030" on January 25. Exh. A, p. 28.

29.     The time "0300" means 12:30 a.m. Exh. A, p. 1. Melton 21:11 – 22:9.

30.     Neither Robinson nor Melton left a copy of the Return of Service with either Larry or Parker or anywhere within their home. Larry 20:24 – 21:12; 22:13-20; 46:17 – 47:1.[2] Parker 40:21 – 41:9.[3]

## Plaintiff's Conclusions of Law

1.     Plaintiffs should be granted summary judgment holding that defendants' actions at 1023 RDL constituted an unreasonable search and seizure because they were taken without a search warrant.

2.     Plaintiffs should be granted summary judgment holding that Melton's supporting affidavit failed to establish probable cause.

3.     Plaintiffs should be granted summary judgment holding that defendants are not entitled to qualified immunity because Melton and Robinson deliberately omitted from Melton's supporting affidavit and withheld from the magistrate the fact that the search and seizure authorized by the warrant had occurred in the past; and/or (ii) because Melton and Robinson failed to allege in Melton's supporting affidavit the particular facts and circumstances underlying the purported existence of probable cause and Melton, the affiant, lacked personal knowledge of the facts to which he attested.

Respectfully submitted this the 9th day of November, 2020.

E. MICHAEL RUBERTI, ESQ., LLC

---

[2] It is undisputed that Larry was looking at plaintiffs' Exhibit A, p. 28, when he gave this testimony.
[3] It is undisputed that Parker was looking at plaintiffs' Exhibit A, p. 28, when he gave this testimony.

By:  /s/ E. Michael Ruberti
E. Michael Ruberti
Post Office Box 20649
St. Simons Island, Georgia 31522
Telephone: (912) 634-2130
Facsimile: (912) 634-3783
Email: emr@rubertilaw.com
Georgia Bar No.: 618343

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

This 9th day of November, 2020.

E. MICHAEL RUBERTI, ESQ., LLC

/s/ E. Michael Ruberti

Georgia Bar No. 618343